Curia, per
Colcock, J.
It may seem to be a work of supererogation to add anything to the elaborate decree of the learned chancellor in this case. But in the course of the argument some new views of the legal doctrine on which the case depends may have been presented to the view of the court. It is said the cases arising under the doctrine of election are susceptible of being divided into two classes; first, those of election proper, where something is given by the will to one who is entitled to some other thing disposed of by the said will to another, in which case the devisee is put to choose whether he will take that which is given, or that to which he has a claim ; and secondly, those cases in which there is an express condition annexed to a devise, with which the devisee must comply or not take the prop,erty ; in which case he is to elect whether he will comply with the condition *513 or give up tlie property; but in wliich, if he does not comply with the condition, he violates none of the provisions of the will as to any other person than himself. And it is suggested that the case before us has been considered in reference to the first class of cases, when in fact it is embraced in the latter ; and that the complainant, although not put to elect between two things given in the will, is restrained from taking any of the subsequently acquired property by the operation of a condition which is imposed by the will on her. *The distinction is a very clear one, and is certainly applicable to the case, though 1 think the decree in substance does embrace both views of the doctrine. But as we are satisfied that the case is not a case of election properly so called, but the case of a condition annexed to a gift, we will take a view of it as regulated by the doctrine and cases which are applicable to that state of things.
It is clear that the widow is not put to choose between two things given in the same will, and that so far as the rule that one cannot claim under a will and defeat at the same time any part of that will, the case is clear of difficulty, for the reasons given in the decree. In determining whether.the restriction contained in the will does prevent her from taking a distributive share of the after acquired property, we are to look to the circumstances of the parties, and to the will, and to the whole will, and to any circumstances arising out of the .rnmediate provisions of the whole will. The intention of the testator :s to be carried into effect, unless he has used technical terms, which must receive their technical meaning, and which restrain the operation of such intention. When men sit down to make their wills, their purpose is to dispose of that which they possess, and it is very rare that we find a man who undertakes to dispose of that wffiich he has not, and that which he consequently may never have, except in some few cases where an estate is expected to descend, and then we find persons making, or attempting a disposition of such expectances. But I think, speaking generally, that it would be considered even by a man in health, and in the prime of life, as a most unnecessary and superfluous act to make any provision for that which he may hereafter acquire. Now when we advert to the circumstances of these parties, we find the testator a man of great affluence, manifesting a proper affection for his *wife, in a generous provision for her future welfare. Does it comport with such a spirit to make a provision by which she should be excluded from any after acquisitions, even if we could suppose that he had it in contemplation to acquire this property, a supposition which is at war with all the circumstances of die case? For when he made this will, he was in possession of a handsome house, which he gave by that will to his wife, but which he afterwards sold, as is stated by the defendants in their answer; so that ;t was this after act which caused him to acquire the property which ;s now the subject of dispute, and therefore it is impossible, that when he made the will he could have looked forward to the acquisition of a thing, which at that time he did not want, and which, to say the least of it, was a property which he never wrnuld have bought for profit, he being a merchant, and a man of great judgment and prudence. These considerations irresistably lead me to conclude, that the testator did not intend to exclude his widow from a participation *514 in any after acquired property. But it is said that whatever may have been his intention, he lias, by the use of technical expression, effected that. The words are, “the provision made for my wife shall he in lieu and bar of all claim or dower, inheritance, or any other claim on her part.” He then concludes his will, and may have died the day after, and the possibility of such an event is in the contemplation of all men of reflection when they make wills. If he had died the next day, or the next month, to what would this restriction have applied? It could have applied to nothing else but the property contained in the will. It follows, therefore, that it was meant to apply to that, and to that only, and there is no ground to stand on except as to the technical meaning of the word inheritance, and it certainly cannot be complained of, that lie who stands upon the strict law should be judged by the strict law. *Now who ever heard of a woman inheriting from her husband? Is this technical language? “Inheritance,” saithCoKE, “cometh from the ancestor; without blood none can inherit, and therefore it is, that he who hath the whole, or entire blood, shall have one inheritance before him who hath but part of the blood of his ancestor.” 3d Reports, 41. it may be said, and has been said, that the testator thought it a proper word to exclude her; but his intention, it has been shewn, was not to exclude her at all. It is much more probable that he thought that dower and inheritance were convertible terms, and that he used both from abundant caution in relation to the property he then possessed; or he may have supposed that it applied to the property which came to him by his wife, and if there was any land so acquired, it was a peculiarly appropriate expression as to that. Or he may have been lead into the mistake (as others have been) by the use of those words in the act of 1795, prescribing the mode of conveying lands belonging to the wife. A case has come before us in which the persons, not knowing the distinction between dower and inheritance, thought proper to use both in the deed. But so far as the intention is to govern, whatever else he may have intended, he did not intend to apply the word to after acquired property; and if in its technical operation it cannot be thus applied, the claim must prevail; for it is laid down that in giving construction to such restrictions the meaning must be clear and express. The rights of the parties claiming are not to be excluded by implication, and this will be found to be the rule in all the cases referred to by the defendants themselves, though in some of them it may appear that the rule has been lost sight of. Indeed I say with the master of 'he rolls in the case of Brodie v. Barry, 2 Ves. & Beames, 129, “ if it were now necessary to discuss the principles upon to reconcile to those principles, or to each other, some of the decisions which have taken place on the subject.” The overwhelming and all controlling desire to protect the rights of the heir on some occasions, and to administer high equity on others, has certainly carried the English judges to great lengths on this as well as on other subjects. But we have no such purpose to effect here. Our principle is an equal distribution where the owner has not disposed of his propertjr; and his will, be it what it may, where he has disposed of his property. In the case of Blake v. Brumbery, 4 Bro. C. C. 23, it is said “no man *515 is to be deprived of his property by guessing or conjecture ; ” and in all the cases of dower this is carried to great length. In Hearie v. Green-bank, the intention by implication cannot be doubted, but the chancellor would not put the infant to her election. And when we turn from those cases in which the court have refused to put the parties to their election, to those in which they have been compelled to elect, on the ground of a condition annexed to the gift, we shall perceive very clearly how this doctrine is to be understood. As in Boughton v. Boughton, 2 Ves. Sen. 12, the condition annexed is, “that if any child or children of mine, or any in their right, or any who may receive benefit by my will shall any way litigate, dispute, or controvert the whole or any part of my will or codocil, or in anywise oppose the disposition which is made in all respects, shall forfeit his or their share; and the same is given to the residuary legatees.” Here there was little doubt, for it is not disputed but that a testator in disposing of his estate may annex whatever lawful conditions he pleases to his bequests. The condition was express, and therefore the parties were held to comply with it. And such is the character of the cases of express condition, or condition so strongly implied (as it is stated in some cases) as to amount to express *coridition. I think I do not venture too much when I say, that there is but one case among the great number referred to, which is in point as to the important fact, and on that I shallcomment at large hereafter, viz : Ward v. Ward, Amb. 299. I have read, and as far as time would allow, have examined the cases, and there are none of after acquired property, except the one above referred to. They are all cases in which the disputes have arisen as to the property possessed by the testator at the time of his death, in which he has been disappointed in his disposition of it by some of those rules which have been considered as applicable to the doctrine of election, as to which however it appears that the judges have been constantly differing. Now in all such cases, although there is some analogy, there is this great difference, that the point on which the case before us turns, was completely settled in those; to wit, the intention of the testator; for where a man makes a will and disposes of his whole estate, though that will be not formal, and consequently ineffectual, yet there is no difficulty in arriving at his intention. It is obvious, and always referred to as the guide of the court; whereas in the case at bar the very question is, what did the testator intend? The case of Ward v. Ward is as follows : Thomas Ward made his will, and, reciting that he was seized of copyhold estate — though in fact he was not — devised all his real estate, &c. He afterwards purchased a copyhold estate, and surrendered it to such uses as he by his last will and testament should appoint, and died without making any other will. Lord Hard-wicke held that the copyhold did not pass by the will, first, because the surrender was to future appointments, and secondly, because the words of the will did not extend to an after purchased copyhold, but only to such as he was seized of at the time of making it. The testator, after devising it to his wife, declares in his will that what he had before* given her should be in full of all dower and right of dower or thirds which she may have or claim in or out of his L real estate. The copyhold which he had bought was, by the custom *516 of the manor, fiable to the widow’s free bench. Held, that the devise is a satisfaction of the free bench, which is a customary right nomine dotis, and so declared by Bracton, and is instead of dower. This is the whole case as it is reported, and it will not be difficult to show that it cannot be supported even on the grounds assumed in the case. That if it could, it is no more than another case in which a widow is considered as barred of all claim to dower in her husband’s lands, when a legacy is given to her in his will upon that express condition. But lastly, the grounds assumed are wholly incorrect in point of law. The first point for determination was, whether the copyhold could pass bv the will. The lord chancellor says it cannot, because the words of the will do not extend to an after purchased copyhold. For the same reason the testator could not have intended to bar his wife of her free bench, for the will did not extend to that, unless it be embraced in the term “dower.” Then it is, or it is not embraced in that term. If it is, it has nothing to do with the case before us; if it is not, surely the chancellor’s calling it dow'er cannot make it such, although it was a convenient mode of disposing-of the case. And if we could call the right of the wife to a distributive share of her husband’s after acquired property, dower, we might dispose of the case in the same short way. But let us see whether his legal position, that the claim of free bench is dower, be correct. Free bench (francus bancus, i. e. sedes libera) is that estate in copyhold lands which the wife hath, on the death of her husband, for her dower, according to the custom of the manor. But it is said the wife ought to be espoused a virgin, and is to hold the lands only so long as she lives sole and *cont'nent- Fitzh. 102. Of this free bench, several manors have several customs, and Fitzherbert calls it a custom whereby in several cities the wife shall have the whole of the lands of her husband for her dower. Fitz. N. B. 150. In the manors of East and West Enbourne, in the county of Berks, and in the manor of Tone in Devonshire, and other parts in the West of England, there is a custom that when a copyhold tenant dies, his widow shall have her free bench in all his customary lands east.a et sola fuerit, but if she commits in-continency she forfeits her estates, though she may redeem them again by the ridiculous penance of riding on the black ram. Now it requires but little comment to show the distinction between such an estate or interest in the husband’s lands, and dower. In some places it extended to all of the lands. In all, it was held only while she remained sole and continent, and she must have been a virgin when espoused. Now there are none of these constituents in dower. But what is conclusive in my mind as to the authority of the case is, that the chancellor puts it on the footing of satisfaction. To me it appears somewhat singular that one thing can be said to have been given in satisfaction of another which was not possessed, unless it was so expressed, that a direct reference is made to the thing which might hereafter come into possession. So that in no point of view can the case be considered as authority, except to show that where property is given in bar of dower the widow is barred of dower in after acquired property — a doctrine however to which I shall never assent. I entertain strong doubts if Lord Hardwicke ever heard of the case of Ward v. Ward, and I think it a case which supports the opinion of Lord *517 Eldon that Ambler is no authority. Since the argument, we have been referred to a case which seems to be considered in point, and therefore shall be examined. It is the case of Druce v. *Dennison, 6 Ves. 385. As a preliminary remark I observe the case had no relation to after acquired property. The subject in dispute was property given by the will and afterwards revoked by a codicil, so that as to that the testator died intestate. The claim of the widow was resisted on the ground of a marriage settlement, in which the word thirds, as well as dower, was used. Now, in the first place, this was not the construction of a will. It was formerly a conceded position that jointure is in bar of all subsequent rights of a wife. It is a purchase by the husband of all her property, and that is distinction enough to show the inapplicability of the case. At first the lord chancellor said this settlement was a bar as to the undevised property, and he says, “as to the word thirds, the clear intention must be taken to mean her interest in case of intestacy. If the word did not occur I doubt whether the personal estate would not have been included under the word dower. The word thirds is never used accurately. It is a sort of expression in common parlance descriptive of the interest upon an intestacy.” These are passing observations of the lord chancellor in the course of the argument, yet, notwithstanding these two strong circumstances, as he seems to think them, he decided the case in favor of the claim. He begins by saying that he will decide the case upon a ground different from that taken in the argument, and then goes on, “ as to the other points, first, whether the settlement was a purchase of the wife’s fortune. Upon so much of the case as appears to me, I do not think it was. According to the modern cases it is established that the settlement for that purpose must either express it to be in consideration of the wife’s fortune, or the contents of it altogether must import, and plainly import it, as much as if expressed. That is the result of the cases upon the subject, and it is not worth the while to consider in what respect the older cases are *unsatisfactory, involving inquiries not easy to execute.” Notwithstanding, then, the passing observations of the lord chancellor, the case is strong in point as far as the analogy goes to the decision which is now made; and I will, as he did, cease to examine the old and analogous cases, a most unprofitable task, and come to those in which the point has been fully, clearly and most explicitly decided, both here and in England. In Roper’s excellent Treaties on Husband and Wife, vol. II. p. 24, speaking of the rights of the wife under the customs of London and York, and the statute of distributions, he says: “ But there is one peculiarity which must be noticed, viz : that in the instance of the widow’s title under the statute of distributions, whether the husband die intestate, or dispose of his personal estate by will, which fails by lapse, if the wife be barred of her distributive share by settlement before marriage, she will be equally excluded in favor of the next of kin, as of the particular legatee. This, however, is not the case when the husband by his will makes provision for his wife, stating it to be in lieu and bar of all her claims upon his personal estate, and then disposes of his personalty, and such disposition lapses, or is void, so that the fund becomes the property of the next of kin. The bar created in favor of the legatee will not be *518 considered as extending to the next of kin ; therefore, notwithstanding the expressions in the will, the widow will be entitled to a share under the statute of distributions.” He goes on to observe that Lord Alvanley found this principle recognized by Lord Cowper in Sympson v. Hulton, and upon the authority of that case decided the case of Pickering v. Lord Stamford. Now, in the case of Sympson v. Hulton, the words are : “all which devises and bequests he declares to be in full of herdower, thirds, and other claims, in lawor equity, or by any local custom, to any other part of his real or personal property.” Yet, as 10 a Parf *he Property bequeathed in the very same will, *the wife took a share under the statute of distributions. And so in the latter case, Pickering v. Stamford, the words are in satisfaction of all dower or thirds which she could have, or claim, in, out of, or to all or any part of his real or personal estate, or either of them. If upon a lapse of the property contained in the same will, the widow was allowed to take a share under the statute of distributions, how much stronger is her claim to property not mentioned in the will, and clearly not within the contemplation of the testator. I shall conclude this branch of the case with a reference to the case of Cogdell v. Cogdell, in which our own court made the same decision as in the two foregoing cases, and the widow was allowed to take a distributive share of the lapsed property.
As to the second question which is made in the brief, it has been most unnecessarily and unprofitably raised in the case; for, in the first place, the testator has himself provided by will in what manner and out of what funds the debts due by him shall be paid, and it ought to have been shewn that they were insufficient before such a question should have been raised. And secondly, the defendants, by their own shewing, in the accounts exhibited, have proved that there were ample funds to pay the debts. By their exhibit G, it appears that they, the executors, owe to the testator the sum of 8112.900, which was a fund in their hands at once, for the payment of debts. And by exhibit No. 2 of their amended answer, they shew that there is due to the firm 8253,000, and that the debts amount to 8120,000, leaving a clear balance of 8233,000; besides the crops of three large estates, and exclusive of the personal property in exhibits F and O, which was sold. But as the court are of opinion that there is no sufficient ground to disturb the old and well established rule on this subject, they do not hesitate to confirm the decree *of the chancellor on that point also, hut they would not be understood to say that it is so inflexible as not to be departed from on some occasions : not, however, without express authority to the executor by a competent tribunal given, or by the will. Upon the question made as to the payment of the money due by the executors into court, the court is not sufficiently informed to make the order required. Although the defendants shew sufficient funds for the payment of the debts, yet a report by the commissioner is necessary; and on going before him, they may show that the debts have been paid, as far as their own debt due to the estate would go, and that they have been diligent in collecting the other debts. But if on such investigation it should be found that the affairs of the estate are still in the same situation, the court will not hesitate to enforce any order which may be made, in conformity with the *519 practice of the court, for carrying into effect the will of the testator.
Nott, J. (some of his friends being concerned) gave no opinion.

Decree affirmed.